IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ANTHONY TAYLOR,

Plaintiff,

v.

CITY OF EAST ST. LOUIS, ILLINOIS,
and RONALD E. MCCULLAM[1],

Defendant.                                            No. 08-839-DRH

## MEMORANDUM AND ORDER

**HERNDON, Chief Judge:**

### I. Introduction

Before the Court is Defendants City of East St. Louis and Ronald E. McClellan's motion to dismiss (Doc. 66) which has been construed as a motion for summary judgment (*See* Doc. 67). Plaintiff Anthony Taylor has filed a response to the motion (Doc. 77). Defendants have filed a reply (Doc. 79).

On November 11, 2008 Plaintiff filed a Complaint pursuant to **42 U.S.C. § 1983** alleging claims of excessive force during his arrest by Defendant Robert McCullum (See Docs. 1 & 7). On October 23, 2010 Plaintiff filed his Second Amended Complaint (Doc. 59) adding state common law claims of assault and battery (Count III) and negligence (Counts IV & V). Specifically, Plaintiff's Second Amended Complaint alleges that on February 28, 2007 Plaintiff was located on the

---

[1] Defendant Ronald McClellan notes that he has been incorrectly referred to in this case as Ronald McCullam.

corner of First Street and St. Clair Street in East St. Louis when Defendant McClellan drove up behind him and asked what was in the back of Plaintiff's truck (Doc. 59 at ¶¶ 10-12). Plaintiff responded that the boxes in the back of his truck were clothing (*Id.* at ¶ 12). Defendant McClellan then asked to see Plaintiff's driver's license which Plaintiff produced and handed to McClellan who was still in his vehicle (*Id.* at ¶ 13-14). Plaintiff then proceeded to return to the building where he was retrieving clothes, at which time, Defendant McClellan left his vehicle and began striking Plaintiff in the head with his nightstick (*Id.* at ¶¶ 15-16). Plaintiff alleges that he suffered physical injuries and emotional distress as a result of the encounter. His Second Amended Complaint alleges claims of § 1983 violations against both Defendant McClellan and the City of East St. Louis (Counts 1 & 2), as well as claims of assault and battery against Defendant McClellan (Count 3) and claims of negligence against both Defendants (Counts 4 & 5).

Subsequently, on November 30, 2009 Defendants submitted a motion to dismiss (Doc. 66). The Court later converted the motion to one for summary judgment as Defendants' motion relied on documents found outside of the pleadings (Doc. 67). Specifically, Defendants argue that they are entitled to summary judgment on all claims because Defendant McClellan's actions and use of force were objectively reasonable in light of the circumstances. Plaintiff has filed a response, arguing that the facts show that McClellan's actions were not objectively reasonable (Doc. 77). Defendants have also filed a reply to their motion (Doc. 79). The Court, having reviewed the parties briefings and relevant exhibits, rules as follows.

## II. Factual Background

There are very few undisputed facts in this case. The parties briefs and supporting affidavits present two entirely different versions of what occurred between Plaintiff and Defendant McClellan on February 28, 2007. The parties do agree that on that night Plaintiff was outside of a business known as the Wash Rack when McClellan pulled up in his vehicle. Plaintiff approached McClellan who asked to see Plaintiff's driver's license and asked about the items located in the back of Plaintiff's truck. Plaintiff produced his driver's license and shortly thereafter Plaintiff turned and talked towards the Wash Rack. At some point, McClellan exited his vehicle and Plaintiff was struck by McClellan with his night stick. The events that occurred between the time McClellan pulled up in his vehicle and struck Plaintiff with his nightstick are heavily disputed.

## III. Summary Judgment Standard

Summary judgment is appropriate under the **FEDERAL RULES OF CIVIL PROCEDURE** when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **FED. R. CIV. P. 56(c);** *Celotex Corp. v. Catrett*, **477 U.S. 317, 322 (1986).** The movant bears the burden of establishing the absence of factual issues and entitlement to judgment as a matter of law. *Wollin v. Gondert*, **192 F.3d 616, 621-22 (7th Cir. 1999).** The Court must consider the entire record, drawing

reasonable inferences and resolving factual disputes in favor of the non-movant. *Schneiker v. Fortis Inc. Co.*, 200 F.3d 1055, 1057 (7th Cir. 2000); *Baron v. City of Highland Park*, 195 F.3d 333, 337-38 (7th Cir. 1999); *Santaella*, 123 F.3d at 461 (citing *Celotex*, 477 U.S. at 323); *Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1205 (7th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). While the Court may not "weigh evidence or engage in fact-finding" it must determine if a genuine issue remains for trial. *See Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007).

In response to a motion for summary judgment, the non-movant may not simply rest on the allegations as stated in the pleadings; rather, the non-movant must show through specific evidence that an issue of fact remains on matters for which the non-movant bears the burden of proof at trial. *Walker v. Shansky*, 28 F.3d 666, 670-71 (7th Cir. 1994), *aff'd*, 51 F.3d 276 (citing *Celotex*, 477 U.S. at 324). No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996); *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir. 1994). In other words, "inferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009) (citation omitted); *see also Anderson*,

477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."). Instead, the non-moving party must present "definite, competent evidence to rebut the [summary judgment] motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000) (citation omitted).

### IV. Analysis

**A.   Excessive Force**

Claims of excessive force during an arrest or investigatory stop are analyzed under the Fourth Amendment's "objectively reasonable" standard. *See Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871 (1986). The issue presented in this type of claim is whether the actions of an officer were "objectively reasonable in light of the facts and circumstances confronting them." *Richman v. Sheahan*, 512 F.3d 876, 882 (7th Cir. 2008) (quoting *Smith v. Ball State University*, 295 F.3d 763, 770 (7th Cir. 2002); *Graham*, 490 U.S. at 397, 109 S.Ct. at 1872). The officer's intent is irrelevant. *Id*. Reasonableness is judge from the perspective of the officer at the scene. *Graham*, 490 U.S. at 396, 109 S.Ct. 1872.

In determining whether the actions were objectively reasonable, the Court must analyze all of the circumstances including: "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the

officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." **Baird v. Renbarger, 576 F.3d 340, 344 (7th Cir. 2009) (quoting Graham, 490 U.S. at 396, 109 S.Ct. at 1872).**

Here, there is a question as to whether Defendant McClellan's actions were objectively reasonable in light of the circumstances as the parties dispute the circumstances surrounding the events of February 28, 2007. Defendant McClellan and Plaintiff Taylor tell conflicting stories for the events that occurred.

While both parties acknowledge that at some point in the conversation Plaintiff turned and walked towards the Wash Rack, the facts surrounding the incident at issue are heavily disputed. Plaintiff states that he walked towards the Wash Rack to get his coat and drink from the building after giving Defendant McClellan his driver's license, and that as he was retreating to the Wash Rack, Defendant McClellan failed to say anything to him (Doc. 77 Ex. A at ¶¶5-6). However, Defendant McClellan states that he ordered Plaintiff back to his vehicle after Plaintiff produced his driver's license but that Plaintiff then began walking towards the Wash Rack, at which time Defendant McClellan alleges that he again ordered Plaintiff back to his vehicle on repeated occasions when he saw Plaintiff walking in the opposite direction of his truck (Doc. 66 Ex. A at ¶¶ 5-7).

The parties further dispute what occurred next. Plaintiff maintains that after he retrieved his coat, Defendant McClellan grabbed him and threw him up against a wall and yelled at him to get on the ground, at which point Defendant

McClellan began striking him on the head with his baton (Doc. 77 Ex. A at ¶¶ 7-8). Plaintiff admits that he tried to get away from McClellan and that McClellan eventually let him go, but that Plaintiff then approached Defendant McClellan when he noticed he was bleeding (*Id*. at ¶¶ 8-9). Plaintiff argues that when he approached McClellan it was in a non-threatening manner but that Defendant McClellan again ordered him to get on the ground and when Plaintiff refused, due to his injuries, Defendant McClellan sprayed him with pepper spray (*Id*. at ¶¶ 10-11).

However, Defendant McClellan's version of events is radically different from Plaintiff's version. Defendant McClellan's affidavit states that after he ordered Plaintiff again to return to his truck, Plaintiff's passenger exited the truck and they both began walking quickly to the Wash Rack at which time Defendant McClellan again ordered them back to the truck (Doc. 66 Ex A at ¶¶ 7-8). At that point, Defendant McClellan got out of his patrol car and approached Plaintiff who tried to run. Defendant grabbed Plaintiff's jacket, but Plaintiff slipped out of his jacket and ran to the rear of the building, only to return a short time (*Id*. at ¶¶ 10-12). When Plaintiff returned to the scene, Defendant McClellan alleges that he informed Plaintiff that he was under arrest and ordered him to lay on the ground (*Id*. at ¶12). Plaintiff refused to do so even though Defendant ordered him several times and instead, began walking towards Defendant McClellan in what Defendant refers to as a "menacing manner" (*Id*. at ¶¶ 12-13). In response, Defendant McClellan sprayed Plaintiff with pepper spray and ordered him on the ground, but Plaintiff refused to comply and ran away from Defendant towards the back of the building (*Id*. at ¶¶ 13-

14).  Defendant grabbed Plaintiff as he turned to run and tried to force him to the ground, but Plaintiff tried to resist him by "hitting and fighting" (*Id*. at ¶ 15).  At that point, Defendant McClellan grabbed his baton and struck Plaintiff in the legs and arms as Plaintiff continued to struggle and resist.  Defendant McClellan admits that as he tried to place Plaintiff on the ground, Plaintiff was struck in the head with the baton in the struggle to arrest him (*Id*.).

Having viewed the briefs and supporting affidavits, it is clear that there are genuine issues of material fact which prevent this Court from entering summary judgment.  Plaintiff and Defendants present two entirely different versions of what occurred on February 28, 2007.  The parties dispute whether Plaintiff ran from the scene of the investigatory stop or merely walked to the Wash Rack to retrieve his coat.  The parties also dispute whether Defendant McClellan ordered Plaintiff to return to the scene on numerous occasions or whether he grabbed Plaintiff without any warning and began hitting him as Plaintiff alleges.  The parties even dispute at what point Defendant McClellan first hit Plaintiff with the baton.  There are clearly genuine issues of material fact as to the surrounding circumstances in this case which prevent the Court from determining the reasonableness of Defendant McClellan's actions given the circumstances.  As such, this Court is precluded from entering summary judgment for the Defendants given the numerous disputed facts.

**B.**     **Qualified Immunity**

Defendants argue, in the alternative, that Defendants are entitled to qualified immunity because Defendant McClellan's action did not violate clearly

established constitutional rights. In determining whether an official is entitled to qualified immunity, a court follows a two step process in which the court 1) determines whether there has been a constitutional violation and 2) if there is a violation, then the court must determine "whether the right was clearly established at the time" the action occurred. ***Baird v. Renbarger*, 576 F.3d 340, 344 (7th Cir. 2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201. 121 S.Ct. 2151, 2156 (2001))**. The Court notes, however, that the Supreme Court has decided that the test is not mandatory and that courts have discretion as to which of the two questions to address first. ***Id.* (citing *Peterson v. Callahan*, – U.S. –, 129 S.Ct. 808, 818-22 (2009))**. Here, Defendants' argument hinges on the stance that Defendant McClellan did not violate a constitutional right by using excessive force as his actions were reasonable in light of the circumstances. However, this Court has already determined that there are too many disputes of material facts which prevent this Court from determining whether Defendant McClellan's actions amounted to excessive force under the circumstances. Given that there are still unresolved issues of material fact, this Court cannot determine whether Plaintiff's constitutional rights were violated and thus, it is prevented from determining whether Defendants are entitled to qualified immunity in this case.

**C.     State Law Claims**

Defendants also argue that they are entitled to summary judgment on Plaintiff's claims of assault and battery and negligence under Illinois law because,

they argue, Defendants are immune from such claims pursuant to the **Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/2-101 et seq**.  The Act provides that "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct."  **745 ILCS 10/2-202.**  Willful and wanton conduct is defined as a "course of action which shows an actual or deliberate intention to cause harm, or if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property."  *Carter v. Chicago Police Officers M.L.*, **165 F.3d 1071, 1080 (7th Cir. 1998) (quoting 745 ILCS 10/1-210)**.  Again, Defendant's argument rests on the finding that Defendant McClellan used reasonable force in his actions against Plaintiff.  Although Plaintiff did not specifically use the words, "willful or wanton" in his Second Amended Complaint, Plaintiff has alleged that Defendant McClellan failed to use objectively reasonable force on Plaintiff and that his actions were unprovoked.  It is possible that, should it be determined that Defendant McClellan's actions were unreasonable, his actions might rise to the level of deliberate intention to cause harm or utter indifference and conscious disregard, given the allegations in the Complaint.  However, there are too many disputes of fact for a determination as to whether the amount of force used by Defendant McClellan was reasonable in light of the circumstances.  As such, the issues of material facts in this case preclude the Court from entering summary judgment in this case.

## V. Conclusion

Accordingly, the Court **DENIES** Defendants' motion for summary judgment (Doc. 66).

**IT IS SO ORDERED.**

Signed this 16th day of April, 2010.

/s/  David R Herndon
**Chief Judge
United States District Court**